[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff seeks damages for injuries she sustained on or, bout July 31, 1990. She claims her injuries were caused by the negligence of the defendants when a lift ramp in the defendants' muffler shop came down on her toe.
The Court makes the following findings, rulings and awards.
On July 31, 1990, the plaintiff went to a Midas Muffler facility owned and operated by the named defendant corporation, and located at 67 Windsor Avenue in the town of Vernon. The realty at said location was owned by the Midas Realty Corporation.
The plaintiff brought her vehicle there for inspection of its exhaust system. She previously had said system worked on by another Midas shop, and that work may have been under a Midas Muffler warranty.
The necessary paper work was accomplished and a mechanic, Paul Page Vik, drove the automobile onto a ramp lift operated by a hydraulic fluid mechanism. The lift was raised and the exhaust system CT Page 634 inspected by Vik who determined a new muffler was needed. Pursuant to their business practice, the manager, Stewart Aivaz, did a secondary inspection and, at the same time, the plaintiff was asked to step into the working or bay area in order to be shown the defects found by the mechanic. That being accomplished, Aivaz returned to the front office and Vik asked the plaintiff to step out while he lowered the car. At that time there was a discussion between Vik and D'Avanzo as to the warranty. D'Avanzo explained the warranty papers were in the glove box and Vik said she would need to get the warranty papers.
D'Avanzo stepped to the rear of the car, approximately seven feet away, and Vik lowered the car. After releasing the compressed air from the system, the lift is lowered by the operator manually moving a spring-loaded lever located to the rear of the ramp in the proximity of the garage doors. If the lever is released at anytime the lift will stop its downward movement, but according to Vik's deposition testimony it might travel up to one inch or so before stopping. (Other witnesses — the owner and an employee of Midas — testified the lift would stop immediately if the lever is released).
There was further divergent testimony at this point. D'Avanzo testified she believed the ramp had been lowered completely because Vik had left the lever area and was heading toward the office while Vik stated he was still at the lever when he suddenly saw D'Avanzo's head at the passenger's side of the car and in the five to fifteen seconds it took him to attempt to stop the lift it came down on her toe.
D'Avanzo, however, testified that after Vik headed toward the office she approached her car intending to reach in through the open window into the glove box for her paperwork. Either way the ramp came down on her toe at that point.
But Vik stated he did not have a full recall of the incident and his testimony was based, at least in part, on his typical procedure. Further Vik could not recall with certainty if he was holding the lever at that time, but he does not think he was.
The Court finds that the defendant, Muffler Shop of Vernon, Inc. was negligent in failing to protect the plaintiff from injury. Vik knew that the plaintiff's warranty papers were in the glove box and that the plaintiff was going to retrieve them. He was negligent in failing to ascertain the lift ramp was completely down before the plaintiff accessed the lift area unattended. CT Page 635
Even under a scenario most favorable to the defendant, Vik was inattentive to the plaintiff's whereabouts. He knew she would be going to her car and even if he were standing at the rear of the vehicle, should have seen the plaintiff reenter the bay and stopped the lift.
The plaintiff, however, was contributorily negligent in placing her foot under the lift ramp. She was not watching where her foot was and placed it under the not yet fully lowered ramp.
The Court assesses her negligence at 15%.
The incident caused a crush injury to the plaintiff's right great toe. She was taken to the Rockville General Hospital emergency room with severe pain and found to have an avulsion fracture of her great toe. She was required to wear a special type shoe for a period of time, and to keep her foot elevated as much as possible. Walking was painful and she could only walk short distances. When pain was still being experienced on August 21, 1990, she called the Rockville Hospital and was told she should see her private physician. She next saw Dr. John Falkerson, an orthopedic specialist at the UConn Medical Center, on September 20, 1990 and her pain continued at that time.
She obtained a temporary handicapped sticker, (good for four months) to be able to park close to her work. The pain persisted and, although her mobility improved, walking was still painful. That condition was generally constant until approximately June 1991 when it subsided to a dull type of ache.
In May 1993, she experienced increased pain in her toe and saw Dr. Carlos Vildozola who diagnosed her as having mild or minimal degenerative changes and a post injury arthritis in the injured toe.
The plaintiff had to buy shoes one half size larger than previously, and wear flat heels. Dr. Vildozola advised her to avoid lengthy walking and prescribed a medication (Voltaren) for nighttime discomfort.
In December 1994, a follow up visit showed no changes in the toe joints after an x-ray comparison, and a minimal tenderness on palpation. There is no medical evidence of permanent disability and Dr. Vildozola felt she should deal with her problem (an CT Page 636 aggravating of a pre-existing mild arthritis of the MP joint) quite well with proper shoes.
The plaintiff, who is now 57 years of age has had some limitation of activity, such as walking, skating and dancing since the date of the accident and has pain intermittently for which she takes a relieving medication.
While it is proper for the trier of fact to inferentially conclude that an injury will be permanent even without medical testimony expressly substantiating permanency, Trani v. AnchorHocking Glass Corp. , 142 Conn. 541 (1955); Dibble v. Ferguson,15 Conn. App. 97 (1988), it remains the plaintiff's burden of proof, by a fair preponderance of the evidence, to satisfy the trier. This Court does not conclude from the evidence that the plaintiff has met that burden of proving a permanent disability.
Damages are assessed against the Muffler Shop of Vernon, Inc. as follows:
Economic Damages $ 662.65
 Non Economic Damages 14000.00 -------- Total $14662.65
 Plaintiff's 15% Negligence — 2199.40 -------- Judgment for plaintiff $12463.25
There being no evidence of negligence on the part of Midas Realty Corp. judgment shall enter in favor of Midas Realty Corp.
In accordance with General Statutes § 52-225a, (b) a hearing is required concerning the amount of collateral source payments made for the benefit of the claimant prior to entering judgment. Accordingly, judgment is stayed until February 10, 1995. Counsel are ordered to file a written request for hearing pursuant to § 52-225a on or before February 9, 1995, if such hearing is desired.
Klaczak, J. CT Page 637